**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL PRACHASITTHISAK,** | ) | |
| **GURDHIAN SINGH, & EIMEAR** | ) | |
| **KENNY,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **No.** |
| | ) | |
| **LOCKE TRANSPORTATION,** | ) | |
| **INC., TERESA LOCASCIO,** | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, Michael Prachasitthisak, Gurdhian Singh, and Eimear Kenny, by their attorneys, the Garfinkel Group, LLC, complain against Defendants Locke Transportation, Inc. and its owner, Teresa Locascio, individually, for: (1) nonpayment of overtime wages in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL"), and the Chicago Minimum Wage Ordinance, Chicago, Ill. Municipal Code, § 1-24 *et seq.* ("Chicago Ordinance"); (2) improper and unlawful pay deductions in violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1, *et seq.* ("Wage Act"); (3) non-payment of earned bonuses, also in violation of the Wage Act; and (4) common law breach of contract for failure to pay earned bonuses, and state:

## INTRODUCTION

1.      This case involves numerous violations of municipal, state, and federal wage and hour laws by a company and owner who enjoy regularly abuse their workforce with rampant wage theft.

1

2.      Locke Transportation and its current president or owner, Teresa Locascio, regularly engage in illegal wage theft and rely on vulnerable employees not to object.

3.      Locascio and Locke regularly steal employee wages through theft in the form of surreptitious illegal pay deductions and retroactive changes to rates of pay, unpaid overtime, mandatory unpaid meetings, and after-hours work time, and refusals to pay out earned and accrued bonuses and vacation time.

4.      Plaintiffs Prachasitthisak and Singh both worked as dispatchers for truckers employed or contracted by Defendants.

5.      Their duties included dispatching orders to drivers, tracking drivers' time and whereabouts, placing calls to railyards, completing billing paperwork, and performing related clerical duties.

6.      Similarly, Plaintiff Kenny was employed first as a clerk, and later as a fleet manager.

7.      Her duties always involved clerical and office work, including scheduling mechanics, assigning mechanics specific trucks to repair, setting repair priorities, scheduling mechanics' hours and time off, and working with drivers to complete their paperwork.

8.      Their duties did ***not*** include "safety affecting activities," as  defined and recognized under the federal FLSA and U.S. Department of Transportation's ("DOT") regulations.

9.      Safety affecting duties typically include driving, working as a driver's helper, loading and unloading trucks, or working directly as a mechanic on motor vehicles used in interstate commerce. (See "Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)", <https://www.dol.gov/agencies/whd/fact-sheets/19-flsa-motor-carrier>). The Plaintiffs' duties included none of these tasks.

10.     Defendants intentionally misclassified Plaintiffs as salaried employees, thereby treating them as exempt from overtime pay requirements under U.S. DOT regulations, despite U.S.

Department of Labor guidance, which explicitly exempts dispatchers from the motor carrier exemption. Id.

11.     Plaintiffs' regular work schedules included five ten-hour shifts totaling 50 work hours per week, translating into overtime pay violations under the FLSA, IMWL, and Chicago Ordinance of a minimum of 10 hours per week. In addition, as discussed below, Plaintiffs received no compensation for attending mandatory meetings on certain Saturdays.

12.     Both Prachasitthisak and Singh were also each guaranteed $5,000 signing bonuses to be paid upon completion of one year's employment. Neither Plaintiff was paid this compensation after completion of one year of service.

13.     In violation of the Wage Act, Singh was also the victim of surreptitious and unlawful breaches of his agreement. He discovered that his pay had been decreased by over $100 gross per paycheck, without notice or permission.

14.     Similarly, Kenny had her wages illegally and surreptitiously changed, going from hourly pay to salaried at a decreased rate, again like with Singh, without providing notice. This too violated the Wage Act.

15.     Finally, upon their departure, Prachasitthisak and Kenny were not paid for their accrued PTO days, a further violation of the Wage Act.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

17.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) (venue, generally) and 29 U.S.C. § 216(b) (FLSA).

## PARTIES

18.     Plaintiff, Michael Prachasitthisak ("Prachasitthisak"), is a former employee of Locke Transportation, Inc. ("Locke"), and the company's owner, Teresa Locascio. Prachasitthisak is a resident of Orland Park, Illinois, in Cook County, within this judicial district.

19.     Plaintiff, Gurdhian Singh ("Singh") is a former employee of Locke and the company's owner, Locascio. Singh is a resident of Roselle, Illinois, in Cook County, within this judicial district.

20.     Plaintiff, Eimear Kenny ("Kenny") is a former employee of Locke and the company's owner, Locascio. Kenny is a resident of Manhattan, Illinois, in Will County, within this judicial district.

21.     At all times relevant herein, Plaintiffs were Defendants' employees as defined by the FLSA, IMWL, IWPCA, and Chicago Ordinance, within this judicial district.

22.      At all relevant times herein, Plaintiffs were not exempt from the overtime provisions of the FLSA, 29 U.S.C. §207, and the IMWL, 820 Ill. Comp. Stat. 105/1 *et seq*.

## FACTS

23.     Locke is an over-the-road trucking company that provides drayage, warehousing, and cold storage shipping services.

24.     Locke's website advertises that since 1991, it has been a leader in the transportation of refrigerated goods in Chicago.

Singh's hire

25.      Singh was hired to work for Locke as a Dispatcher in July 2018.

26.     Singh was promised a salary of $62,000 per year, with a $5,000 bonus to be paid at the conclusion of year one in his offer letter, which set forth the following terms of employment and compensation:

> Per our discussion, the position is for a second shift dispatcher position. We would like to arrange for your first day of employment/training on Monday August 6th if agreeable. Based on your experience I'd like to offer slightly more than advertised, $62,000 per year for this salaried position, with a $5000.00 bonus after one year of employment and another $5000.00 after your second year of employment. The enclosed employee handbook outlines the personal time off that our company offers for new employees, 10 personal days after the first year of employment. We are willing to extend the 5 personal days off to you in 2018 after 90 days of employment with Locke Transportation Inc.

27.     Singh was scheduled for ten-hour shifts, and worked five days per week.

28.     As a dispatcher, Singh's duties revolved around his dealings with drivers, including sending them various information and tracking their respective locations.

29.     Singh was required to attend certain mandatory Saturday meetings every other month for which he received no pay.

Prachasitthisak's hire

30.     Prachasitthisak began working as a dispatcher for Locke on October 1, 2018. He remained in that role until his resignation on October 9, 2019.

31.     Prachasitthisak was promised a base salary, in this case, $55,000 per year, and was similarly scheduled to work fifty hours per week as a dispatcher.

32.     Like Singh, Prachasitthisak received an offer letter, which set forth the agreement between he and Locke for wages he would receive in exchange for performing his job duties:

> Per our discussion, the position is for a second shift Dispatcher. We would like to arrange for your first day of employment on Monday October 1 , 2018 if agreeable. Based on your experience I'd like to offer a base salary of $55,000 per year for this salaried position plus a $5000.00 bonus if you stay employed with Locke for one year and a guarantee of at least $60,000/year salary at the beginning of your second year should you accept the terms. The enclosed employee handbook outlines the personal time off that our company offers employees, 10 personal days total starting in 2019 (90 days after the start of employment) as well as outlining health insurance plans/options.

33.     Like Singh, Prachasitthisak's duties involved coordinating drivers' efforts, tracking their whereabouts, and filing necessary paperwork.

34.     Prachasitthisak also attended the mandatory Saturday meetings every other month for which he received no pay.

35.     Prachasitthisak worked fifty hours per week until he left the company in October 2019.

Kenny's hire

36.     Kenny began working as a repair shop clerk, performing exclusively office work in the repair shop for Locke on November 12, 2018. She remained in that role until she was promoted to fleet manager on October 9, 2019.

37.     Kenny was promised an hourly rate of $16 per hour.

38.     Like Singh and Prachasitthisak, Kenny received an offer letter, which set forth the agreement between she and Locke for wages she would receive in exchange for performing her job duties:

Per our discussion, the position is for Repair Shop Clerk – Days. We would like to arrange for your first day of employment on Monday November 12, 2018 if agreeable, hours for this position are 6:00am to 4:00pm Monday through Friday. Also, per our discussion, the pay for this position is $16.00 hourly. We are also offering five (5) vacation/sick days starting in March of 2019 as well as health insurance including medical, dental, and vision plans/options beginning after the first 90 days of employment.

39.     Locascio mandated that Kenny to work from 6:00 a.m. until 4:00 p.m., Monday through Friday, meaning she worked five ten-hour shifts per week or 50 hours.

40.     At no point, between their hiring and the end of their employment, did the Plaintiffs receive overtime pay for hours worked in excess of forty per week .

Locke's pay practices are per se illegal for its dispatchers

41.     Locke's pay practices for its dispatchers are, per se, illegal.

6

42.     Locke pays its dispatchers on a salaried, rather than an hourly basis. Locke regularly schedules its dispatchers for fifty-hour workweeks, but does not pay them overtime wages, or time-and-a-half their hourly rate, for their hours worked over forty.

43.     Locke's handbook confirms their use of this pay practice, with the handbook describing employees paid on a "salary basis" as "exempt" from overtime pay.

44.     The U.S. Department of Transportation's regulations and the FLSA's motor carrier exemption set forth when exemption applies to trucking employees, rendering them exempt from FLSA overtime pay requirements:

> Section 13(b)(1) of the FLSA provides an overtime exemption for employees who are within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935, except those employees covered by the small vehicle exception described below.

> Thus, the 13(b)(1) overtime exemption applies to employees who are:

> 1. Employed by a motor carrier or motor private carrier, as defined in 49 U.S.C. Section 13102 (see Employer below);

> 2. Drivers, driver's helpers, loaders, or mechanics whose duties affect the safety of operation of motor vehicles in transportation on public highways in interstate or foreign commerce (see Employee Duties below); and

> 3. Not covered by the small vehicle exception (see Small Vehicle Exception below).

(See "Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)", <https://www.dol.gov/agencies/whd/fact-sheets/19-flsa-motor-carrier>).

45.     The same U.S. D.O.L. fact sheet specifically addresses the question of whether dispatchers are covered by the motor carrier exemption:

> The Section 13(b)(1) overtime exemption does not apply to employees not engaged in "safety affecting activities", **_such as dispatchers_**, office personnel, those who unload vehicles, or those who load but are not responsible for the proper loading of the vehicle. Only drivers, drivers' helpers, loaders who are responsible for proper loading, and mechanics working directly on motor vehicles that are to be used in transportation of passengers or property in interstate commerce can be exempt from the overtime provisions of the FLSA under Section 13(b)(1).

Id. (emphasis added).

7

46.     Work that only indirectly affects safety is not exempt work. 29 C.F.R. 782.6(c); *Morris v. McComb*, 332 US 422 (U.S. 1947).

47.     The applicable fact sheets and regulations specifically set forth that, "The Section 13(b)(1) overtime exemption does not apply to employees not engaged in 'safety affecting activities,' such as dispatchers[.]" See 29 C.F.R. 782.6(c)(1).

48.     As dispatchers, Prachasitthisak and Singh did not perform job duties that could legitimately be considered "safety affecting" for FLSA and DOT regulation purposes, and as such, were not eligible for the motor carrier overtime pay FLSA exemption.

49.     Locke improperly and incorrectly categorized both Prachasitthisak and Singh as salaried and exempt from FLSA overtime pay requirements under the motor carrier exemption.

50.     Prachasitthisak worked 50 or more hours per week, without overtime pay, from his hiring in October 2018, until his resignation in October 2019.

51.     Singh worked 50 or more hours per week, without overtime pay, from his hiring in July 2018, until the end of his employment with Locke in February 2020.

52.     At no point did Locke pay Prachasitthisak or Singh overtime wages, despite their work schedules consistently requiring them to work in excess of fifty hours per week.

**Locke & Locascio underpaid Kenny every week for she worked for the company**

53.     On approximately February 24, 2019, Locascio shifted Kenny's hours to 8:00 a.m. to 6:00 p.m., but the number of shift hours per week, 50, remained the same. At that time, Kenny received a small pay increase to $16.50 per hour. She still was not paid overtime wages.

54.     In approximately early August 2019, Locascio promoted Kenny to co-fleet manager. Kenny's co-fleet manager, Antonio Pantoja, performed all mechanical work and supervision. Kenny's duties remained exclusively clerical.

55.     In August 2019, approximately three weeks after her promotion, Kenny's pay was increased to $22.50 per hour.

56.     As fleet manager, Kenny's hours and shift start and end times remained the same. Locascio and Locke still did not pay her overtime wages for her hours worked over 40 each week.

57.     Locascio's offer of a promotion came with new requirements such as mandatory unpaid Saturday hours. As fleet manager, Kenny was also required to work every other Saturday – her co-manager worked the alternate Saturdays – of at least 30 minutes of work.

58.     After the onset of the COVID-19 pandemic led to changes in who was required to work on-site, she became responsible for all Saturday shifts. At no point was she paid for the extra Saturday work she was mandated to perform.

59.     On several occasions, Kenny was required to work in excess of 30 unpaid minutes on a Saturdays. This includes, but is not limited to:

    a.  From August 2019 through March 14, 2020 – Kenny worked between one and four hours every other Saturday, depending on issues that arose, without pay. This after working 50 hours without overtime pay that same week.

    b.  From March 21 through May 30, 2020 – Kenny worked between one and four hours every Saturday, depending on the issues that arose, without pay. This after working 50 hours without overtime pay that same week; and

    c.  April 18, May 23, and May 30, 2020 – on each of these Saturdays, Kenny worked two hours without pay, after working 50 hours without overtime pay that same week.

60.     On weekdays, Kenny clocked in using a biometric scanner. As the Saturday work was often performed remotely, Kenny could not clock in to record her Saturday work hours. As a

result, Locascio failed to track Kenny's unpaid Saturday work hours throughout the entirety of Kenny's employment.

61.    On May 27, Locascio emailed Kenny and her co-fleet manager to inform them that they were required to begin working two additional hours per day, 12-hour shifts, without any increased pay:



62.    That week, despite not working Monday for Memorial Day, Kenny worked 48 hours – 12 hours on May 27, 28, and 29, respectively, and 2 hours Saturday – but was only paid for 40 hours, therefore she worked eight uncompensated hours that week alone.

63.    Like Prachasitthisak and Singh, Kenny, too, was not covered by the FLSA's motor carrier exemption as her work duties were purely clerical, and did not involve safety affecting activities.

64.    Indeed, the applicable U.S. D.O.L. fact sheets and regulations state, clearly, "Employees whose work is confined to such "nonsafety" activities are not within the exemption, even though the proper performance of their work may have an indirect effect on the safety of operation of the motor vehicles on the highways." See 29 C.F.R. 782.6(c)(1).

65.    The same regulation specifically mentions "rate clerk[s]" as exempt, and makes clear that the mere fact an employee being assigned to work in a mechanic garage or shop has no impact on the applicability of the exemption:

> An employee of a carrier by motor vehicle is not exempted as a "mechanic" from the overtime provisions of the Fair Labor Standards Act under section 13(b)(1) merely because he works in the carrier's gargage, or because he is called a "mechanic," or because he is a mechanic by trade and does mechanical work. (*Wirtz* v. *Tyler Pipe & Foundry Co.,* 369 F. 2d 927 (C.A. 5).) The exemption applies only if he is doing a class of work defined as that of a "mechanic", including activities which directly affect the safety of operation of motor vehicles in transporation on the public highways in interstate or foreign commerce.

Id.

66.     Kenny was not covered by the motor carrier exemption and should have been paid time-and-a-half for **all** hours worked over 40.

67.     Locke and Locascio's actions in failing to ever pay Kenny overtime rates for hours worked over 40, and requiring Kenny to work unpaid Saturdays were illegal and violate the FLSA, IMWL, and Chicago Ordinance.

Locke failed to pay Prachasitthisak and Singh their earned bonuses

68.     In relevant part, the Wage Act both mandates that employers pay their employees final compensation and allows employees to sue for the complete payment of final compensation. The Act defines "final compensation," in relevant part, as:

> Payments to separated employees shall be termed "final compensation" and shall be defined as . . . . **earned bonuses, and the monetary equivalent of earned vacation** and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties.

820 Ill. Comp. Stat. 115/2 (emphasis added).

69.     Both Singh and Prachasitthisak were promised $5,000 one-year bonuses, which they would earn upon completion of one year's employment with Locke.

70.     The Illinois D.O.L. regulations promulgated for interpreting the Wage Act reinforce that the bonuses-in-question are owed:

> a) An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met. Unless one of the

conditions for the bonus is that the employee be on the payroll at the time of the bonus payout, the bonus is due and owing to the employee at the time of separation.

Ill. Admin. Code tit. 56, § 300.500.

71.     Both Prachasitthisak and Singh fulfilled the obligations present in order for them to receive their bonuses, to wit, completing one full year of employment.

72.     Knowing that Locke had a reputation for not paying out bonuses and other earned compensation, Prachasitthisak even wrote to Locke Human Resource Director Jody Rice-Wagner to confirm he would be receiving his agreed earned bonus:

> Since you brought up the year I was hoping you could confirm my $5,000 bonus for completing the year and the new salary of $60,000? Also, when would that be effective on my paycheck? I attached the employment offer just in case.

Michael Prachasitthisak

## Hi Michael,

## Sorry for the late response. Teresa will be honoring your offer letter,

73.     This was a lie; Locke ultimately reneged on this reaffirmation of its agreement with Prachasitthisak.

74.     Despite fulfilling their respective obligations, neither Singh nor Prachasitthisak was paid his $5,000 bonus by Locke.

### Locke failed to pay Prachasitthisak and Kenny's final PTO days

75.     As a condition of employment, one of the benefits promised by Locke was ten (10) paid vacation days per year for dispatchers.

76.     As set forth in Locke's employee handbook, as a condition of his employment, these days were to be paid time off, and were to be paid out at the regular rate of pay at the end of an employee's tenure with Locke:

> Upon separation, accrued unused vacation earned through the last day of active employment will be paid at the employee's base rate of pay at termination in accordance with applicable law.

> Vacation will be paid at the employee's base rate at the time the time off is taken. Vacation pay is not included in overtime calculations and does not include any special forms of compensation such as incentives, commissions, bonuses or shift differentials. If a holiday falls during the employee's vacation, the day will be charged to holiday pay rather than to vacation pay.

77.     At the time he was separated from Locke, Prachasitthisak had one remaining paid day off.

78.     Locke failed to pay Prachasitthisak for his final paid vacation day following his resignation from Locke.

79.     Likewise, Kenny's offer letter provided that she would receive a minimum of five paid sick days per year.

80.     At the time of her resignation, Kenny had 72 hours or nine paid sick days remaining unused.

81.     Upon receipt of her final paycheck, Kenny discovered she had not been paid for three sick days she used the week of her resignation, or any other remaining paid sick time.

82.     The Wage Act makes clear that earned paid sick time must be paid out upon an employee's resignation or termination:

> [W]henever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

820 Ill. Comp. Stat. Ann. 115/5.

83. When Locke and Locascio deliberately failed to pay out Prachasitthisak and Kenny's accrued paid sick time, they again violated the Wage Act.

Locke regularly breached agreements in violation of the Wage Act

84. The Wage Act clearly defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 Ill. Comp. Stat. Ann. 115/2.

85. It was common knowledge amongst dispatchers that Locke regularly breached its agreements with employees, deducting from their pay and/or altering compensation agreements without first notifying them.

86. During the course of his employment, Singh became aware of Locke's penchant for secretly altering its workers' pay.

87. Other dispatchers and Human Resource employees had informed him at points that Locke would secretly deduct from its drivers' pay when the company decided it was merited. This includes Dispatcher Manager Candice Kwiecinski and Dispatcher Tammy Hernandez, who both informed Singh about the practice.

88. Specifically, the company would typically set a arbitrary amount, that they determined was appropriate, and deduct that total from drivers' pay in Locke's payroll system.

89. Kwiecinski would order dispatchers like Singh to email certain employers tasked with administering payroll, namely Rick Kwiecinski and Rice-Wagner, to make the deductions when Locke decided it was warranted.

90. Similarly, Kenny was ordered by Locascio, on more than one occasion, to reduce mechanics' pay as a form of punishment.

14

ABC

91.     In approximately September 2019, Singh discovered that Locke had altered his pay as well, breaching its agreement and reducing the amount it paid Singh.

92.     Originally, Singh he was paid $1,192.31 per week gross based on the salary outlined in his job offer letter.

93.     Starting in September 2019, Locke decreased his gross pay such that he was only earning $1,057.69 per week gross, a $134.62 decrease.

94.     Singh's pay stubs for the weeks of August 25 through 31 and September 1 through 7, 2019 clearly show the change in his pay:

August 25, 2019 – August 31, 2019:

Check stub for the period     **08/25/2019**
to     **08/31/2019**
with a pay date of     **Sep 9, 2019**

| WEEKLY | RATE | HR/UNIT | CURRENT $ |
|---|---|---|---|
| Salary<br>Bonus<br>Brv<br>Vac/Sick | | | 1,192.31 |

September 1, 2019 – September 7, 2019:

Check stub for the period     **09/01/2019**
to     **09/07/2019**
with a pay date of     **Sep 16, 2019**

15

| WEEKLY | RATE | HR/UNIT | CURRENT $ |
|---|---|---|---|
| Salary<br>Bonus<br>Brv<br>Vac/Sick | | | 1,057.69 |

95.     Singh was neither provided notice of the change in his compensation nor an explanation as to why his pay was suddenly decreased.

96.     Similarly, in March 2020, without notice, Locascio breached her agreement with Kenny.

97.     In March, Kenny discovered that Locascio had, without notice, prior warning, or obtaining written consent, switched her from hourly pay to a salary, thereby reducing her gross pay.

98.     Previously, Kenny earned $1,125 per week gross. After Locascio's secret wage theft, she was paid only $1,076.92 per week, a $48.08 pay decrease:

March 15, 2020 – March 21, 2020:

| | | |
|---|---|---|
| Pay Period | 03/15/2020 - 03/21/2020 | |
| Pay Date | 03/30/2020 | |

| RATE | HOUR/UNIT | CURRENT |
|---|---|---|
| 22.50 | 49.75 | 1,119.38 |

March 22, 2020 – March 28, 2020:

| | | |
|---|---|---|
| Pay Period | 03/22/2020 - 03/28/2020 | |
| Pay Date | 04/06/2020 | |

| RATE | HOUR/UNIT | CURRENT |
|---|---|---|
| | | 1,076.92 |
| | | $1,076.92 |

99.     This $48.08 underpayment continued weekly until Kenny's resignation.

100.	It is a Wage Act violation to alter the terms of an agreement and pay an employee less than previously agreed after the work has been performed.

101.	Locascio continues terrorizing her employees, engaging in rampant wage theft and flaunting her behavior, to this day.

## COUNT I

### MICHAEL PRACHASITTHISAK, GURDHIAN SINGH, & EIMEAR KENNY AGAINST LOCKE TRANSPORTATION, INC. FLSA – UNPAID OVERTIME

102.	Plaintiffs incorporate Paragraphs 1 – 101 as though fully set forth herein.

103.	Plaintiffs bring Count I under the FLSA for unpaid overtime wages.

104.	Pursuant to the FLSA, an action to recover overtime pay may be maintained in any federal or state court of competent jurisdiction. 29 U.S.C. § 216(b).

105.	The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

106.	Defendant Locke was Plaintiffs' employer, and Plaintiffs were Locke's employees, as defined by the FLSA, 29 U.S.C. § 203(d), (e).

107.	Locke, by its management or agents, violated the FLSA by failing to pay the Plaintiffs time-and-a-half for their hours worked over forty in each workweek, instead misclassifying them as salaried and exempt from overtime pay requirements, between the time of each Plaintiff's hiring, and the end of their respective tenures with Locke.

108.	Locke's violation of the FLSA was willful.

109.	As a direct result of Locke's violation of the FLSA, Plaintiffs suffered the loss of compensation in the form of overtime pay.

## COUNT II

### MICHAEL PRACHASITTHISAK, GURDHIAN SINGH, & EIMEAR KENNY AGAINST TERESA LOCASCIO INDIVIDUALLY FLSA – UNPAID OVERTIME

110.    Plaintiffs incorporate Paragraphs 1 – 101 as though fully set forth herein.

111.    Plaintiffs bring Count II under the FLSA for unpaid overtime wages.

112.    Pursuant to the FLSA, an action to recover overtime pay may be maintained in any federal or state court of competent jurisdiction. 29 U.S.C. § 216(b).

113.    The FLSA requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

114.    Locascio possesses and exercises the following authority as it relates to Locke:

    a.    The power to hire and fire employees;

    b.    Supervisory authority over employees, including control over their work schedules and conditions of employment;

    c.    Determining employees' methods and rates of pay;

    d.    Maintenance of employees' records.

115.    Locascio was Plaintiffs' employer, and Plaintiffs were Locascio's employees, within the meaning of the FLSA. 29 U.S.C. § 203(d), (e).

116.    Locascio, by her management or agents, violated the FLSA by failing to pay Plaintiffs time-and-a-half for their hours worked over forty in each workweek, instead misclassifying them as salaried and exempt from overtime pay requirements, between the time of each Plaintiff's hiring, and the end of their respective tenures with Locke.

117.    Locascio's violation of the FLSA was willful.

118.   As a direct result of Locascio's violation of the FLSA, Plaintiffs suffered the loss of compensation in the form of overtime pay.

## COUNT III

### MICHAEL PRACHASITTHISAK, GURDHIAN SINGH, & EIMEAR KENNY AGAINST LOCKE TRANSPORTATION, INC. IMWL – UNPAID OVERTIME

119.   Plaintiffs incorporate Paragraphs 1 – 101 as though fully set forth herein.

120.   Plaintiffs brings Count III under the IMWL for unpaid overtime wages.

121.   As a direct result of Locke's violation of the IMWL, Plaintiffs suffered the loss of compensation in the form of overtime pay.

122.   The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times their regular hourly rate for each hour worked in excess of forty in a workweek. 820 Ill. Comp. Stat. 105/3(c), (d).

123.   Locke was Plaintiffs' employer, and Plaintiffs were Locke's employees, within the meaning of the MWL. 820 Ill. Comp. Stat. 105/3(c), (d).

124.   Locke, by its management or agents, violated the IMWL by failing to pay the Plaintiffs time-and-a-half for their hours worked over forty in each work week, instead misclassifying them as salaried and exempt from overtime pay requirements, between the time of each Plaintiff's hiring, and the end of their respective tenures with Locke.

125.   Locke's violation of the IMWL was willful.

126.   As a direct result of Locke's violation of the IMWL, Plaintiffs suffered the loss of compensation in the form of unpaid overtime wages.

## COUNT IV

### MICHAEL PRACHASITTHISAK, GURDHIAN SINGH, & EIMEAR KENNY AGAINST TERESA LOCASCIO INDIVIDUALLY IMWL – UNPAID OVERTIME

127.    Plaintiffs incorporates Paragraphs 1 – 101 as though fully set forth herein.

128.    Plaintiffs brings Count IV under the IMWL for unpaid overtime wages.

129.    The IMWL requires an employer to pay its covered, non-exempt employee one and one-half times her regular hourly rate for each hour worked in excess of forty in a workweek. 820 Ill. Comp. Stat. 105/3(c), (d).

130.    Locascio possesses and exercises the following authority as it relates to Locke:

   a.    The power to hire and fire employees;

   b.    Supervisory authority over employees, including control over their work schedules and conditions of employment;

   c.    Determining employees' methods and rates of pay;

   d.    Maintenance of employees' records.

131.    Locascio, as Locke's owner, was Plaintiffs' employer, and Plaintiffs were Locke's and Locascio's employees, within the meaning of the IMWL. 820 Ill. Comp. Sta. 105/3(c), (d).

132.    Locascio, by her management or agents, violated the IMWL by failing to pay the Plaintiffs time-and-a-half for their hours worked over forty in each workweek, instead misclassifying them as salaried and exempt from overtime pay requirements, between the time of each Plaintiff's hiring, and the end of their respective tenures with Locke.

133.    Locascio's violation of the IMWL was willful.

134.    As a direct result of Locascio's violation of the IMWL, Plaintiffs suffered the loss of compensation in the form of unpaid overtime wages.

## COUNT V

### MICHAEL PRACHASITTHISAK, GURDHIAN SINGH, & EIMEAR KENNY AGAINST LOCKE TRANSPORTATION, INC.
### CHICAGO ORDINANCE – UNPAID OVERTIME WAGES

135.    Plaintiffs incorporates Paragraphs 1 – 101 as though fully set forth herein.

136.    Plaintiffs bring Count V under the Chicago Ordinance for unpaid overtime wages.

137.    The Chicago Ordinance requires employers to pay their covered, non-exempt employee one-and-one-half times their regular hourly rate for each hour worked in excess of 40 in a workweek in the same manner as required under the IMWL. Chicago, Ill. Municipal Code, § 1-24-040; 820 Ill. Comp. Stat. 105/3(c), (d).

138.    Locke was the Plaintiffs' employer, and the Plaintiffs were Locke's employees, within the meaning of the Chicago Ordinance. Chicago, Ill. Municipal Code, § 1-24-010.

139.    Locke violated the Chicago Ordinance by failing to pay the Plaintiffs one-and-one-half times the Chicago minimum wage as defined by the Chicago Ordinance for all hours worked over forty each workweek for the entirety of each Plaintiff's respective employment with Locke. This resulted in them receiving less than the legal overtime rate for their overtime hours worked for the entirety of each's respective employment.

140.    Locke's violation of the Chicago Ordinance was willful.

141.    As a direct result of Locke's violation of the Chicago Ordinance, Plaintiffs suffered the loss of compensation in the form of unpaid overtime wages.

## COUNT VI

### MICHAEL PRACHASITTHISAK & GURDHIAN SINGH
### AGAINST LOCKE TRANSPORTATION, INC.
### WAGE ACT – UNPAID EARNED BONUSES

142.    Plaintiffs incorporates Paragraphs 1 – 101 as though fully set forth herein.

143.    Plaintiffs Prachasitthisak and Singh bring Count VI under the Wage Act for unpaid earned bonuses.

144.    The Wage Act, requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned bonuses." 820 Ill. Comp. Sta. 115/2.

145.    Locke was Plaintiffs' employer, and Plaintiffs were Locke's employees, as defined by the Wage Act. 820 Ill. Comp. Sta. 115/2.

146.    In each's respective offer letter, Locke unequivocally promised both Prachasitthisak and Singh $5,000 bonuses upon completion of one full year of employment.

147.    Prachasitthisak and Singh's respective one-year bonuses constitute an "earned bonus" as they had each, respectively, met all conditions for earning the bonus and there was an unequivocal promise to pay it as required by the Wage Act. 56 Ill. Adm. Code 300.500(a).

148.    By refusing to pay Prachasitthisak and Singh for their respective earned bonuses, Locke breached its agreement with both and denied them final compensation to which they were lawfully entitled.

149.    As a direct result of Locke's violation of the Wage Act, Prachasitthisak and Singh were damaged in the form of being denied their final compensation.

## COUNT VII

### MICHAEL PRACHASITTHISAK & GURDHIAN SINGH
### AGAINST TERESA LOCASCIO INDIVIDUALLY
### WAGE ACT – UNPAID EARNED BONUSES

150.  Plaintiffs incorporates Paragraphs 1 – 101 as though fully set forth herein.

151.  Plaintiffs Prachasitthisak and Singh bring Count VII under the Wage Act for unpaid earned bonuses.

152.  The Wage Act, requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned bonuses." 820 Ill. Comp. Sta. 115/2.

153.  Locke was Prachasitthisak and Singh's employer, and Prachasitthisak and Singh were Locke's employees, as defined by the Wage Act. 820 Ill. Comp. Sta 115/2.

154.  In each's respective offer letter, Locke unequivocally promised both Prachasitthisak and Singh $5,000 bonuses upon completion of one full year of employment.

155.  Plaintiffs' respective one-year bonuses constitute an "earned bonus" as they had each, respectively, met all conditions for earning the bonus and there was an unequivocal promise to pay it as required by the Wage Act. 56 Ill. Adm. Code 300.500(a).

156.  Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 Ill. Comp. Sta. 115/13.

157.  Locascio knew that both Prachasitthisak and Singh had earned their one-year bonuses when she refused to pay their respective bonuses, blaming any failures to pay such bonuses on the circumstances under which each Plaintiff ended their employment with Locke, which have no bearing on whether the bonuses are owed under the Wage Act.

158. By refusing to pay the Prachasitthisak and Singh for their earned bonuses, Locascio knowingly violated the Wage Act in breaching Locke's agreements with Prachasitthisak and Singh and denying them final compensation to which they were lawfully entitled.

159. As a direct result of Locascio's violation of the Wage Act, Prachasitthisak and Singh were damaged in the form of being denied their final compensation.

## COUNT VIII

### GURDHIAN SINGH & EIMEAR KENNY
### AGAINST LOCKE TRANSPORTATION, INC.
### WAGE ACT VIOLATION

160. Plaintiff incorporates Paragraphs 1 – 101 as though fully set forth herein.

161. Plaintiffs Singh and Kenny bring Count VIII for breach of an agreement for wages in violation of the Wage Act.

162. The Wage Act mandates that employers must pay employees wages or final compensation pursuant to any employment contract or agreement between the parties. 820 Ill. Comp. Stat. Ann. 115/2.

163. Locke was Plaintiff Singh and Kenn's employer, and Singh and Kenny were Locke's employees, as defined by the Wage Act. Id.

164. Starting on approximately September 1, and continuing until the end of his employment, without providing any notification or obtaining written consent, Defendants unlawfully paid Singh $134.62 gross less than agreed in each paycheck. from each of Singh's paychecks.

165. The reduction in Singh's pay, between September 1, 2019 and the end of his employment in February 2020, totaled 24 weeks of work, or approximately 24 weekly pay periods, so the overall reduction total approximately $3,230.88, before the 2% monthly interest penalties authorized by the Wage Act are applied.

166.     Beginning in March 2020, Locke altered the terms of Kenny's compensation without warning, switching her from hourly pay to salary, and paying her $48.08 less than agreed, gross, per week.

167.     The reductions in Kenny's pay, between March 22, 2020 and the end of her employment in June 2020, totaled 11 weeks of work, or approximately 11 pay periods, so the overall reduction in her pay totals approximately $528.88 before the 2% monthly interest penalties authorized by the Wage Act are applied.

168.     The alterations of Kenny's wages also breached her agreement and violated the Wage Act.

169.     As a direct result of Locke's violations of the Wage Act, Singh and Kenny were damaged in the form of being denied agreed and earned wages.

## COUNT IX

### GURDHIAN SINGH & EIMEAR KENNY
### AGAINST TERESA LOCASCIO INDIVIDUALLY
### WAGE ACT – UNPAID EARNED BONUSES

170.     Plaintiff incorporates Paragraphs 1 – 101 as though fully set forth herein.

171.     Singh and Kenny bring Count IX for unlawful pay deductions under the IWPCA.

172.     The Wage Act mandates that employers must pay employees wages or final compensation pursuant to any employment contract or agreement between the parties. 820 Ill. Comp. Stat. Ann. 115/2.

173.     Locke was Singh and Kenny's employer, and Singh and Kenny were Locke's employees, as defined by the Wage Act. 820 Ill. Comp. Sta. 115/2.

174.     Starting on approximately September 1, and continuing until the end of his employment, without providing any notification or obtaining written consent, Defendants

unlawfully paid Singh $134.62 gross less than agreed in each paycheck. from each of Singh's paychecks.

175.    The reduction in Singh's pay, between September 1, 2019 and the end of his employment in February 2020, totaled 24 weeks of work, or approximately 24 weekly pay periods, so the overall reduction total approximately $3,230.88, before the 2% monthly interest penalties authorized by the Wage Act are applied.

176.    Beginning in March 2020, Locke altered the terms of Kenny's compensation without warning, switching her from hourly pay to salary, and paying her $48.08 less than agreed, gross, per week.

177.    The reductions in Kenny's pay, between March 22, 2020 and the end of her employment in June 2020, totaled 11 weeks of work, or approximately 11 pay periods, so the overall reduction in her pay totals approximately $528.88 before the 2% monthly interest penalties authorized by the Wage Act are applied.

178.    Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 Ill. Comp. Sta. 115/13.

179.    Locascio knew that both Singh and Kenny had agreements setting forth the terms of their earned compensation from Locke. Nevertheless, Locascio ordered, authorized, or otherwise endorsed the reductions in Singh and Kenny's compensation, respectively, despite the fact that it violated both of their respective agreements with Locke.

180.    As a direct result of Locascio's violation of the Wage Act,

181.    Singh and Kenny were damaged in the form of being denied agreed and earned wages.

COUNT X

**MICHAEL PRACHASITTHISAK & EIMEAR KENNY
AGAINST LOCKE TRANSPORTATION, INC.
WAGE ACT – UNPAID VACATION DAYS**

182.    Plaintiff incorporates Paragraphs 1 – 101 as though fully set forth herein.

183.    Prachasitthisak and Kenny bring Count X for failure to pay final compensation, in the form of earned paid vacation days, in violation of the Wage Act.

184.    The Wage Act, 820 Ill. Comp. Sta. 115 *et seq.* requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned vacation time." 820 Ill. Comp. Stat. 115/5.

185.    Locke was Plaintiff Prachasitthisak and Kenny's employer, and Prachasitthisak and Kenny were Locke's employees, as defined by the Wage Act. 820 Ill. Comp. Sta. 115/2.

186.    Prachasitthisak was entitled to ten (10) paid vacation days per year. In 2018-2019, Prachasitthisak had used only nine out of his ten paid days at the time he was separated from Locke.

187.    Kenny, too, was entitled to ten (10) paid vacation days per year. At the time of her resignation, she had only used one such day.

188.    By refusing to pay Prachasitthisak and Kenny for their earned vacation time, Locke breached its agreements with them and denied them vacation pay to which they were lawfully entitled.

189.    Locke violated the Wage Act by failing to pay Prachasitthisak and Kenny their earned vacation pay.

190.    As a direct result of Locke's violation of the Wage Act, Prachasitthisak and Kenny were damaged in the form of being denied their vacation pay.

## COUNT XI

### MICHAEL PRACHASITTHISAK & EIMEAR KENNY
### AGAINST TERESA LOCASCIO INDIVIDUALLY
### WAGE ACT – UNPAID VACATION DAY

191.    Plaintiffs incorporate Paragraphs 1 – 101 as though fully set forth herein. Prachasitthisak and Kenny bring Count XI for failure to pay final compensation, in the form of earned paid vacation days, in violation of the Wage Act.

192.    The Wage Act, 820 Ill. Comp. Sta. 115 *et seq.* requires employers to pay their employees according to their agreements and to pay employees all earned wages or final compensation, including "earned vacation time." 820 Ill. Comp. Stat. 115/5.

193.    Locke was Plaintiff Prachasitthisak and Kenny's employer, and Prachasitthisak and Kenny were Locke's employees, as defined by the Wage Act. 820 Ill. Comp. Sta. 115/2.

194.    Prachasitthisak was entitled to ten (10) paid vacation days per year. In 2018-2019, Prachasitthisak had used only nine out of his ten paid days at the time he was separated from Locke.

195.    Kenny, too, was entitled to ten (10) paid vacation days per year. At the time of her resignation, she had only used one such day.

196.    Decision makers who knowingly permit the violation of the Wage Act face individual liability for such violations. 820 Ill. Comp. Sta. 115/13.

197.    Locascio knew that both Prachasitthisak and Kenny had remaining PTO days at the time of each's respective separation from Locke, but willfully refused to pay them for that day.

198.    By refusing to pay Prachasitthisak and Kenny for their earned vacation time, Defendants breached their agreements with Prachasitthisak and Kenny, and denied them vacation pay to which they were lawfully entitled.

199.    Locascio violated the Wage Act by failing to pay Prachasitthisak and Kenny earned vacation pay.

200.     As a direct result of Locascio's violation of the Wage Act, Prachasitthisak and Kenny were damaged in the form of being denied their vacation pay.

WHEREFORE, the Plaintiffs, Michael Prachasitthisak, Gurdhian Singh, and Eimear Kenny respectfully request that this Court enter an order, granting judgment in their favor against Defendants Locke Transportation, Inc. and Teresa Locascio, individually, awarding them:

A.     Damages in the form of lost wages and overtime pay;

B.     Damages in the form of the unpaid earned bonuses;

C.     Damages in the amount of any unlawful pay deductions and other Wage Act violations resulting in lost wages;

D.     Damages in the amount of the value of accrued paid days off that were not paid;

E.     Liquidated damages in the amount of double her actual damages under the FLSA;

F.     Statutory damages pursuant to the 5% interest penalties and treble damages, set forth under the IMWL (820 Ill. Comp. Stat. 105/12(a));

G.     Statutory treble damages pursuant to the Chicago Ordinance, Ill. Municipal Code, § 1-24-110;

H.     Statutory damages of 2% monthly interest penalties in accordance with the Wage Act, 820 Ill. Comp. Stat. 115/14;

I.     Their reasonable attorneys' fees;

J.     The costs of this action; and

K.     Ordering such other and further relief as the Court deems appropriate and just.


The Garfinkel Group, LLC                          Respectfully submitted,
6252 N. Lincoln Avenue
Chicago, IL 60659
Max Barack (IARDC No. 6312302)
(847) 767-0362                                    /s/ Max Barack
max@garfinkelgroup.com                            One of the Plaintiffs' Attorneys

Haskell Garfinkel (IARDC No. 6274971)
(312) 404-3792
haskell@garfinkelgroup.com